IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Charles B. Mierek ) | CA No. 7:07-400-HMH-BHH |
| ) | |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Bank of America Cororation; and Bank of ) | |
| America MBNA; Equifax Information ) | |
| Services, LLC; Equifax, Inc; and FIA Card ) | |
| Services, N.A., ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The plaintiff, proceeding *pro se*, has brought claims against the defendants for violations of 15 U.S.C. § 1681c & 1681s-2 of the Fair Credit Reporting Act ("FCRA"). The plaintiff contends that the defendants have been improperly reporting that three of his accounts became delinquent on dates that he believes are inaccurate. The plaintiff also contends that the defendants have continued to report such inaccuracies outside of a seven year limitations period as prescribed by 15 U.S.C. § 1681c(4).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

In 1992 and 1993, the plaintiff opened three revolving credit card accounts (the "Accounts") with MBNA America Bank, N.A., who has since been succeeded by FIA Card Services, N.A. (Geiser Aff. ¶ 1) (hereinafter "FIA/MBNA"). (Am. Compl. ¶ III 1). According to evidence submitted by the defendants, the plaintiff became delinquent on each of these Accounts in September 2000 after accumulating a combined total balance of over $25,000. (Geiser Aff. ¶ 5, 23, 42.) The plaintiff disputes this fact and contends that all three accounts were paid in full in the spring of 1999. (Pl. Aff. ¶ 2.)

The defendants have submitted evidence, however, that FIA/MBNA attempted to collect on each of the Accounts without success. In 2001, after FIA/MBNA was unable to collect the balance owed on each Account, it charged off the Accounts and wrote off a loss of $27,859.84. (Geiser Aff. ¶ 6, 10, 24, 28, 43, 47.) Below is a summary of each account as supported by evidence of the defendants:

**a.     Account xxxx-xxxx-xxxx-7394, Converted to xxxx-xxxx-xxxx-10763 ("Account 1076")**

The plaintiff opened Account 1076 with FIA/MBNA on March 19, 1992. (Geiser Aff. ¶ 4.) The plaintiff remained current and in good standing on Account 1076 until September 15, 2000. (Geiser Aff. ¶ 5.) On March 28, 2001, FIA/MBNA charged off Account 1076 with a balance of $2,802.07. (Geiser Aff. ¶ 6.) On April 5, 2001, FIA/MBNA sold account 1076 to a third party with a balance of $2,802.07. (Geiser Aff. ¶ 7.) Beginning in April 2001 and continuing through the present day, FIA/MBNA has reported Account 1076 to Credit Reporting Agencies (hereinafter "CRAs") as charged off and purchased by another lender. (Geiser Aff. ¶ 9.) The defendants have produced evidence that beginning in 2001 and

continuing through the present day, FIA/MBNA has responded to all inquiries from CRAs by investigating and verifying the accuracy of the information each reported regarding Account 1076 and by investigating and verifying that Account 1076 was in fact charged off and sold in March and April 2001 respectively. (Geiser Aff. ¶ 10.)

**b.     Account xxxx-xxxx-xxxx-1006, Converted to xxxx-xxxx-xxxx-4041 (Account 4041)**

The plaintiff opened Account 4041 with FIA/MBNA on October 29, 1992. (Geiser Aff. ¶ 22.) The defendants contend that the plaintiff remained current and in good standing on Account 4041 until September 24, 2000. (Geiser Aff. ¶ 23.) On April 28, 2001, FIA/MBNA charged off Account 4041 with a balance of $13,555.34. (Geiser Aff. ¶ 24.) On May 6, 2001, FIAMBNA sold Account 4041 to a third party with a balance of $13,555.34. (Geiser Aff. ¶ 25.) Beginning in May 2001 and continuing through the present day, FIA/MBNA has reported Account 4041 to the CRAs as charged off and purchased by another lender. (Geiser Aff. ¶ 27.) The defendants have produced evidence that beginning in 2001 and continuing through the present day, FIA/MBNA has responded to all inquiries from CRAs by investigating and verifying the accuracy of the information each reported regarding Account 4041 and by investigating and verifying that Account 4041 was in fact charged off and sold in April and May 2001 respectively. (Geiser Aff. ¶ 28.)

**c.     Account xxxx-xxxx-xxxx-5970, Converted to xxxx-xxxx-xxxx-9115 (Account 9115)**

The plaintiff opened Account 9115 with MBNA on November 11, 1993. (Geiser Aff. ¶ 41.) The defendants contend that the plaintiff remained current and in good standing on Account 9115 until September 23, 2000. (Geiser Aff. ¶ 42.) On April 28, 2001, FIA/MBNA charged off Account 9115 with a balance of $11,502.43. (Geiser Aff. ¶ 43.) On May 6,

2001, FIA/MBNA sold account 9115 to a third party with a balance of $11,502.43. (Geiser Aff. ¶ 44.) Beginning in May 2001 and continuing through the present day, FIA/MBNA has reported Account 9115 to the CRAs as charged off and purchased by another lender. (Geiser Aff. ¶ 46.) The defendants have produced evidence that beginning in 2001 and continuing through the present day, FIA/MBNA has responded to all inquiries from CRAs by investigating and verifying the accuracy of the information each reported regarding Account 9115 and by verifying that Account 9115 was in fact charged off and sold in April and May 2001 respectively. (Geiser Aff. ¶ 47.)

The plaintiff contends, however, that the defendants have not been properly reporting information related to the Accounts and, further, that they have been reporting such inaccuracies outside of a seven year statutory period of limitations.

## APPLICABLE LAW

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The plaintiff brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Nor

should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### SUMMARY JUDGMENT STANDARD OF REVIEW

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists, however. Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

As an initial matter, there remain only three defendants in this case: Bank of America Corporation, Bank of America MBNA, and FIA Card Services, N.A.[1] In his Amended Complaint, the plaintiff does not differentiate between these defendants for purposes of his claims. [See Doc. 39.] The plaintiff either refers to the entities as "the defendants" or the "bank defendants." *Id*.

The defendants, however, have consistently represented that the named defendants Bank of America Corporation and Bank of America MBNA are not proper party defendants to this action. [Doc. 25 at 1; Mem. Supp. Summ. J. at 11; Geiser Aff. ¶ 50.] Bank of America Corporation has never issued any credit cards, as alleged, (Geiser Aff. ¶ 50) and Bank of America MBNA is not the name of any legal entity.

The plaintiff has not argued or produced any evidence that the two putative Bank of America defendants are, in fact, proper parties. There exists no genuine issues of fact as to any liability that they might have to the plaintiff, as a result. Even still, claims against them would be dismissed for the same reasons as those discussed below concerning FIA/MBNA.

**I.      Ripeness of Motion**

The plaintiff argues that the defendants' summary judgment motion is premature because "no discovery is complete and as such [the plaintiff] . . . had not even had the opportunity to learn BOA position on the facts of the case." (Resp. Summ. J. at 2.) The plaintiff is mistaken. The scheduling order in this case set the discovery deadline for

---

[1] Defendants Equifax Information Services, LLC and Equifax, Inc. were dismissed from this case based upon a settlement between those entities and the plaintiff. [Doc. 99.]

September 24, 2007. [Doc. 30.] The plaintiff never sought any extension of that deadline. It has now expired. Moreover, the deadline for the defendants to file a motion for summary judgment was October 4, 2007, the day on which they actually filed such motion [Doc. 80]. [Doc. 30.] Not only is the motion not premature, it would have been delinquent were it to have been filed at any later date. If the plaintiff has failed to take discovery in this case or to enforce his rights in discovery served it is of his own choice.[2] The present motion is ripe for consideration.

## II.     Claims Against FIA Card Service, N.A.

The defendants have interpreted the Amended Complaint [Doc. 39] to make two claims against FIA/MBNA. First, the plaintiff appears to allege that FIA/MBNA violated 15 U.S.C. § 1681c by providing incorrect and derogatory information to Consumer Reporting Agencies ("CRA") more than seven years past the date of [his] last transaction. (Am. Compl. ¶¶ III 5, 7). Second, the defendant interprets the Amended Complaint to allege that FIA/MBNA violated section 15 U.S.C. § 1681s-2 by failing to properly investigate the validity or correctness of the information reported to the various CRAs. (Am. Compl. ¶¶ III 5-8). The Court will address each in turn.

---

[2] The plaintiff contends that the defendants failed to provide discovery which he requested. The plaintiff, however, has never filed any motion to compel. Even now the plaintiff has not provided the Court with any copies of discovery served, as required by Fed. R. Civ. P. 37. The plaintiff states that he served various sets of interrogatories on the defendants on or after August 23, 2007. (Mierek Aff. ¶¶ 3-5.) Of course, those interrogatories would have been untimely because they were served at such a point as to not provide the defendants with the full time for a response, prior to the September 24, 2007 deadline, as provided by the rules. *See* Fed. R. Civ. P. 6(d) & 33(b)(3). For all these reasons, the plaintiff's complaints concerning discovery are not relevant.

A.      **Derogatory and Incorrect Information**

Concerning the plaintiff's first claim against FIA/MBNA, the defendants have produced evidence that the information regarding the plaintiff's accounts provided to the CRAs was at all times accurate. (Geiser Aff. ¶¶ 21, 40, 49 & Exs. B-E, H-L, M-N.) Randolph Geiser, an Assistant Vice President Operations Manager with the Credit Bureau Disputes division of FIA, has sworn that, at all times, FIA/MBNA correctly reported the delinquency date, charge off date, and date sold for the plaintiff's Accounts 1076, 4041, and 9115 to the CRAs. *Id*.

In response, the plaintiff has produced no evidence whatsoever creating any genuine issue of fact as to the accuracy of the information provided to CRAs. While the plaintiff has submitted an affidavit (Pl. Aff. ¶ 6) disputing that he became delinquent on Accounts 1076, 4041, and 9115, on September 15, 2000 (Geiser Aff. ¶ 5), September 24, 2000 (Geiser Aff. ¶ 23), and September 23, 2000 (Geiser Aff. ¶ 42), respectively, he has not actually produced any evidence demonstrating that they are inaccurate. He has produced no evidence or allegation that the date of delinquency was some other date or that the accounts were, in fact, never delinquent at all, as he seems to imply in his Amended Complaint (Amend Compl. ¶ 2 ("Mr. Mierek paid off the debt . . . in full in the spring of 1999.") No reasonable jury could find for the plaintiff, on the bare allegation that he "disputes that those are the correct dates at which the accounts, in fact, became delinquent." (Pl. Aff. ¶ 6.) The plaintiff has simply failed to meet his burden under Fed. R. Civ. P. 56(e) to demonstrate "by affidavits or as otherwise provided by this rule, . . . specific

facts showing that there is a genuine issue for trial." *Id*. The plaintiff may not rest upon "mere allegations or denials." *Id*.

Not only is there no evidence that FIA provided inaccurate information to CRAs but there is no legal argument that FIA violated any seven year limitations period in reporting information, accurately or otherwise to CRAs. As stated, the plaintiff believes that these inaccurate dates were wrongly provided to CRAs "more than seven years past the last transaction" on the accounts, in violation of 15 U.S.C. § 1681c of the Fair Credit Reporting Act ("FCRA"). Section 1681c(4) states that "no **consumer reporting agency** may make any consumer report containing . . . [a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years."[3] 15 U.S.C. § 1681c(4). As the defendants argue, this provision, on its face, applies only to CRAs and not to the providers of information like FIA/MBNA. *See also Jonas v. International Airline Employees F.C.U.*, 2006 WL 1409721, at *3-4 (S.D.N.Y. May 19, 2006).

The FCRA defines a CRA as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer

---

[3] The plaintiff did not identify the precise section but has simply argued that the defendant's actions violated "15 U.S.C. § 1681 *et seq*." The defendants have identified Section 1681c(4) as the specific subsection containing the seven year period of limitations. The Court has confirmed that it does, and the plaintiff has not argued the applicability of some other section. Accordingly, the Court will presume that this is the statutory provision upon which he basis his argument.

reports." 15 U.S.C. § 1681a(f).   The plaintiff nowhere alleges that FIA/MBNA is a CRA and has produced no evidence that it is.  It is not. There is no evidence or allegation that FIA/MBNA assembles credit reports for dissemination to third parties as contemplated by the statute.  *See id.*  By contrast, the plaintiff specifically characterizes Equifax as a CRA. (Amend. Compl. § 8.)

Accordingly, FIA/MBNA could not have violated Section 1681c by providing information to any CRAs outside of any limitations period because it is not, itself, a CRA. The plaintiff has made no effort whatsoever to explain how Section 1681c applies to FIA/MBNA.[4]

As a result, the plaintiff's claim against FIA/MBNA for reporting inaccurate information outside of the seven year period of limitations should be dismissed.

### B.     Failure to Investigate

The plaintiff next complains that FIA/MBNAs actions have violated 15 U.S.C. § 1681s-2.  The defendants interpret that claim to rest upon subsection (b) of that statute, regarding "Duties of furnishers of information upon notice of dispute."  *Id*.  A violation of section 1681s-2**(b)** occurs when a Furnisher, such as FIA/MBNA, negligently or willfully fails to reasonably investigate a properly lodged consumer dispute as required by 15 U.S.C

---

[4] As the defendants contend, even if the statute did somehow apply to FIA/MBNA, the seven year limitations period has not run.  The seven year period begins to run 180 days from the date of the first delinquency on an account.  *See* 15 U.S.C. § 1681c(c)(1).  As each of the three accounts became delinquent in September 2000 (See Geiser Aff. ¶¶ 5, 23, 42), section 1681c would not prohibit CRAs from reporting information on the plaintiff until April 2008.  To the extent the plaintiff believes that the seven year period runs from the date of the last transaction in the[] accounts" (Amend. Compl. ¶ 5), his position is not correct.  *See* 15 U.S.C. § 1681c(c)(1).

§ 1681s-2(b)(1)(A). *See Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 431 (4th Cir. 2003). The Court does not interpret the plaintiff's Amended Complaint or response to summary judgment to include any such claim. While the plaintiff contends that Equifax, "the defendant consumer reporting agency[,] did not independently fully and properly investigate the validity or correctness of the information" provided by FIA/MBNA (Amend. Compl. § 8), the plaintiff has nowhere alleged a failure to investigate by FIA/MBNA.

Instead, his resort to Section 1681s-2 appears to implicate subsection (a) as simply another basis for liability for the alleged reporting of inaccurate information by FIA/MBNA. Subsection (a) states, "A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a). In his Amended Complaint, the plaintiff cites to Section 1681s-2 in the context of allegations that the defendant is reporting inaccurate information. (See Amend. Compl. ¶ 7.) Accordingly, the Court interprets the plaintiff's Amended Complaint to only include a claim pursuant to subsection (a). Nothing in the plaintiff's response to summary judgment changes that conclusion.

For the same reasons as discussed above regarding the plaintiff's Section 1681c claim, the plaintiff's Section 1681s-2**(a)** claim must fail because he has produced no evidence of any inaccurate information.

Out of an abundance of caution, however, the Court also finds that the plaintiff has not produced any evidence creating a genuine issue of fact that FIA/MBNA either negligently or willfully failed to investigate his credit complaints in violation of Section 1681s-2(b). The defendants have produced evidence that beginning in August 2000 and

-12-

continuing through November 2006, the plaintiff lodged no less that twenty-two (22) duplicative complaints with CRAs concerning his three Accounts. (See Geiser Aff at 2-5, 6-9.) For each of these disputes, FIA/MBNA received an Automated Credit Bureau Verification ("ACDV") from a CRA requesting verification of information disputed by the plaintiff. *Id*. The evidence suggests that each and every time FIA/MBNA received an ACDV, it investigated the accuracy of the reported information, verified accuracy of the reported information, and notified the appropriate CRA of the results of its investigation. *Id*.

The plaintiff has produced no evidence to the contrary and has made no allegations of other failures of FIA/MBNA to investigate. There is simply no evidence for a jury to consider concerning a Section 1681s-2(b) claim. The claims pursuant to Section 1681s-2, therefore, should be dismissed.

For all these same reasons, these identical claims pursuant to Sections 1681c and 1681s-2 would fail as to Bank of America Corporation and "Bank of America MBNA" if they were, in fact, proper parties to this case. As stated, however, the plaintiff has produced no evidence from which a reasonable jury could conclude that they are.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendants' motion for summary judgment [Doc. 80] be GRANTED

_____IT IS SO RECOMMENDED.

                                              s/Bruce H. Hendricks
                                              United States Magistrate Judge

February 25, 2008
Greenville, South Carolina